INTERSTATE CONTAINER
CORP., Petitioner,

v.

WORKERS' COMPENSATION APPEAL
BOARD (KEIM), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 30, 1998.
Decided April 14, 1998.

Gillian T. Bozik, Allentown, for petitioner.

Donald F. Smith, Jr., Reading, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Interstate Container Corporation (Employer) appeals from an order of the Workers' Compensation Appeal Board (WCAB) affirming a decision of the workers' compensation judge (WCJ) to deny Employer's petition to modify Douglas Keim's (Claimant) benefits. We affirm.

Claimant, a union employee, was injured on July 25, 1992 while in the course of his employment with Employer. Through a Notice of Compensation Payable, dated June 4, 1993, Employer acknowledged liability for Claimant's right shoulder torn rotator cuff, and Claimant began receiving total disability benefits. On June 2, 1994, Claimant's treating physician released Claimant for light duty work.[1] (R.R. at 173a.)

On December 1, 1994, Kenneth Mason, Employer's Manager of Human Resources, offered Claimant a non-union janitorial position at Employer's box plant and requested that Claimant respond to the offer by December 8, 1994. In his response, by letter dated December 22, 1994, Claimant indicated that he would be unable to accept the position because it would require him to lose his union benefits and seniority. In addition, Claimant implied that the position was not within the limitations of his medical restrictions, and therefore, he was not capable of performing the job.

On January 3, 1995, in response to Claimant's letter refusing Employer's offer of the non-union janitorial position, Employer filed a petition to modify Claimant's compensation benefits based on Claimant's refusal to accept the offered job. Claimant filed a timely answer to Employer's petition, alleging that the janitorial position was unavailable because accepting the offered position would require Claimant to leave the collective bargaining unit and lose seniority rights and other union-related benefits. Claimant further alleged that the offered position was not within his physical capabilities.

At hearings held before the WCJ, Employer presented the deposition testimony of Mason in support of its petition. Mason stated that he received a Work Ability report indicating that Claimant was capable of light duty work and, based on that report, offered Claimant the light duty job of janitor at the box plant on December 1, 1994. (R.R. at 12a–14a, 40a, 55a.) Mason further testified that he provided Claimant with a description of the duties required of the position along with the hours, pay rate and start date.[2] According to Mason, Claimant was informed that he would not be expected to be on the plant floor and would only be working in the plant's lunchroom, rest rooms, locker rooms and in an office building attached to the plant. (R.R. at 26a.) Mason mentioned that the temperature in those areas varied, so that it could be cold and damp or it could be warm.[3] (R.R. at 27a.) Mason further testified that the job offer included a provision that, if Claimant were able to establish that a particular duty was not within Claimant's medical restrictions, Claimant would not be required to perform it. (R.R. at 194a, 55a.) With regard to Claimant's union status, Mason stated that he would not have opposed any argument from the union that the janito-

---

**1.** Prior to Claimant's release to light duty work, Claimant was restricted to sedentary work as of May 11, 1994. On January 27, 1995, due to a reaction to medication, Claimant was again totally disabled until March 10, 1995 when he was released for sedentary work. (R.R. at 173a–74a.)

**2.** Mason testified that the job description was that of janitor with the performance of light office work. The janitorial job duties assigned to the position included, but were not limited to, running a sweeper, dusting, emptying trash cans in the general offices, a general cleanup of the

outside area where employees eat lunch and the cleaning of the restrooms, locker rooms and lunch room. Mason testified that the light office work included making copies, distributing inter-office memos, placing paychecks in envelopes and assisting with the switchboard when needed. (R.R. at 15a, 55a.)

**3.** As part of Claimant's medical restrictions, Claimant was to avoid cold and damp environments. (R.R. at 176a.)

rial position was work "in the plant" because Claimant would have been working in the lunchroom and locker rooms that are located within the plant.[4] (R.R. at 20a.) Mason's testimony also reflects that he informed Claimant that if Claimant accepted the janitor position, he might not lose his seniority, but Mason was unsure of what other benefits Claimant would lose.[5] (R.R. at 28a.)

In opposition to Employer's petition, Claimant testified on his own behalf and presented the deposition testimony of Stephen F. Latman, M.D.[6] In addition to describing his physical problems,[7] Claimant testified that acceptance of the janitorial position would require him to lose his seniority along with other union benefits because the offered position was not under the collective bargaining agreement.

After considering the evidence, the WCJ found that the janitorial position was not actually available to Claimant because accepting it would have resulted in a loss of union benefits. The WCJ also held that Employer failed to meet its burden of proving that Claimant was capable of performing the duties of the janitorial position based upon the credible testimony of Claimant's medical witness, Dr. Latman. The WCAB affirmed, and Employer now appeals to this court.

On appeal,[8] Employer first argues that the WCAB erred in affirming the WCJ's decision

that the janitorial position was not available to Claimant because there was no evidence of record establishing that Claimant would sacrifice any union status or associated benefits by accepting the position. We disagree.

■ The Supreme Court of Pennsylvania, in *Kachinski v. Workmen's Compensation Appeal Bd. (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), set forth the following procedure to govern the modification of benefits when an injured employee is able to return to work:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Id.* at 252, 532 A.2d at 380. An employer who seeks to modify a claimant's benefits must initially establish that there has been a

---

4. A provision in the collective bargaining agreement required a union employee to work "in the plant" to retain seniority rights. If a union employee did not work in the plant for more than two years, the employee would lose seniority. (R.R. at 66a.)

5. Employer also presented the deposition testimony of Mark W. Scinico, M.D., a board certified internist. Dr. Scinico testified that Claimant would be able to perform the janitor position in the box plant, but with certain limitations. (R.R. at 149a, 170a.)

6. Dr. Latman, a board certified orthopedic surgeon, testified that Claimant was released for light duty work on June 2, 1994 with a medical restriction to avoid damp and cold environments. Dr. Latman further testified that, as of January 27, 1995, Claimant was again totally disabled and incapable of performing the janitorial job. (R.R. at 173a–74a.)

7. Claimant testified that his right shoulder causes him constant pain along with numbness that extends down from the neck into the right arm. Claimant also stated that, as a result of his condition, he could barely lift anything and is unable to push a mop or sweeper without the arm or hand becoming numb; Claimant noted that he is capable only of doing light dusting around the house with his left hand. (R.R. at 205a–06a, 210a, 216a.)

8. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Bd. (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988). Substantial evidence is such evidence a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Bd. (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992).

change in the claimant's condition.[9] To meet the second prong of *Kachinski*, an employer must establish that the job to which a claimant was referred to is "actually available." *Young v. Workmen's Compensation Appeal Bd. (Weiss Markets, Inc.)*, 113 Pa.Cmwlth. 533, 537 A.2d 393, *appeal denied*, 520 Pa. 622, 554 A.2d 513 (1988). For purposes of an employer's petition to modify compensation, our courts have held that an offered alternative position will not be "actually available" if it requires a claimant to forfeit his union benefits gained from the former position.[10] *St. Joe Container Co. v. Workmen's Compensation Appeal Bd. (Staroschuck)*, 534 Pa. 347, 633 A.2d 128 (1993); *Fledderman v. Workmen's Compensation Appeal Bd. (Stackpole Carbon Corp.)*, 93 Pa.Cmwlth. 44, 500 A.2d 215 (1985).

■ Employer maintains that *St. Joe Container* and *Fledderman* are inapplicable. Employer points out that in *St. Joe Container* and *Fledderman*, the claimants worked for their respective employers for a substantial period of time, as opposed to Claimant here, who only worked for Employer for three years. Employer claims that because the magnitude of the claimants' sacrifices, in terms of union benefits that accumulated over three decades, was pivotal to the decisions in those cases, the holdings in those cases do not govern this situation. Although we recognize that the duration of Claimant's union position with Employer was short in comparison to the duration of the claimants' positions in *St. Joe Container* and *Fledderman*, we cannot agree that Claimant's sacrifice of his union standing is any less significant.[11] Therefore, if the janitorial position requires Claimant to sacrifice his valuable union benefits, that job is not actually available to Claimant. *St. Joe Container*, 633 A.2d 128; *Fledderman*, 500 A.2d 215.

In this regard, Employer specifically challenges the WCJ's findings that, by accepting the janitorial position, Claimant would lose union benefits, claiming that this finding is unsupported by evidence in the record.[12] However, here, Claimant testified that the janitorial position offered to him was not within the collective bargaining agreement and as a result, he would lose his seniority rights and other union benefits if he accepted the non-union position.[13] In fact, Mason acknowledged that the position fell outside of the collective bargaining agreement and that Employer refused to put the position under the agreement. (R.R. at 17a.) Further, although Mason testified that he did not believe Claimant would lose his seniority rights by accepting the position, Mason acknowl-

9. Here, the first prong of *Kachinski* is satisfied because medical evidence of a change in Claimant's condition was produced. Dr. Latman testified that Claimant was released for light duty work as of June 2, 1994. (R.R. at 176a.)

10. In determining whether certain alternative employment is actually available to a claimant, the extent of a claimant's injury is a primary consideration. The extent of the injury caused in the workplace may reasonably include the benefits associated with the former position. As a result, a union employee need not accept a non-union position that would require forfeiture of union benefits. *St. Joe Container Co. v. Workmen's Compensation Appeal Bd. (Staroschuck)*, 534 Pa. 347, 633 A.2d 128 (1993).

11. Indeed, in *St. Joe Container*, our supreme court specifically declined to "recognize 'degrees of harshness' with respect to the forfeiture of union status." *St. Joe Container*, 633 A.2d at 131. Although Claimant has been a union employee for only three years, Claimant has still received job security and vacation and holiday pay as benefits of his past position under the

collective bargaining agreement, all of which Claimant would be in danger of losing if he accepted the janitorial position.

12. Specifically, Employer challenges Findings of Fact 8 and 9, which state: "the position being offered as janitor in the box plant was outside the collective bargaining unit," and "if Claimant were to have accepted the offered position of janitor for the box plant, he would have been at risk to lose seniority rights, and would have lost all union benefits, including health and welfare coverage." (WCJ's Findings of Fact, Nos. 8 and 9.)

13. In this regard, Employer makes the argument that, because the seniority provision in the collective bargaining agreement does not address what happens when a union employee accepts a non-union position, acceptance of a non-union job would entail no sacrifice of union benefits. However, this argument is meritless. Clearly, a collective bargaining agreement is intended to address only union positions. Thus, the fact that the seniority provision does not address acceptance of non-union positions is only to be expected and means nothing with regard to the issue before us here.

edged that he did not know what other union benefits Claimant would lose. (R.R. at 17a–18a, 28a.) This testimony provides substantial evidence to support the WCJ's findings that Claimant would lose his union benefits if he accepted the janitorial position, thereby making that position unavailable to Claimant.

Because Employer failed to meet its burden of establishing that work was available to Claimant, and because there was substantial evidence to support the WCJ's findings, the WCAB did not err in affirming the WCJ's denial of Employer's petition to modify Claimant's benefits.[14]

Accordingly, we affirm.

### ORDER

AND NOW, this 14th day of April, 1998, the order of the Workers' Compensation Appeal Board, dated August 12, 1997, is hereby affirmed.

---

14. Employer also argues that the WCAB erred in affirming the WCJ's decision that Claimant was not capable of performing the janitorial job because that decision was based on equivocal medical testimony of Claimant's treating physician, Dr. Latman. However, we need not address this additional argument because we have already determined that the janitorial position was unavailable to Claimant because of the forfeiture of union benefits.