**Joseph MALESKI, Petitioner,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PITTSBURGH), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 28, 2002.

Decided Aug. 2, 2002.

Publication Ordered Oct. 21, 2002.

Joseph S. Hornack, Pittsburgh, for petitioner.

Dale A. Cable, Pittsburgh, for respondent.

Before: SMITH–RIBNER, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Joseph Maleski (Petitioner) petitions the Court for review of the decision of the Workers' Compensation Appeal Board (Board) which reversed the decision of the Workers' Compensation Judge (WCJ) granting the City of Pittsburgh's (Employer) suspension petition. Petitioner contends that the Board committed an error of law when it relied upon *O'Brien v. Workers' Compensation Appeal Board (City of Philadelphia)*, 780 A.2d 829 (Pa. Cmwlth.2001), to determine that the clerk II position offered to Petitioner was actually available to him when it would have created a substantial impact or effect upon his pension.

Petitioner was employed as a police officer for the City of Pittsburgh for 28 years. On January 31, 1992, Petitioner sustained a work-related injury when he slipped on ice and fell backwards, injuring his neck, right arm and right hand. Thereafter, Petitioner returned to light-duty work at the police station, answering telephones and processing reports. On November 23, 1993, Employer and Petitioner executed a supplemental agreement whereby Petitioner retired from active duty due to a special incentive program and was granted workers' compensation benefits of $455 per week, to be received in addition to his pension. In May 1999 Employer informed Petitioner by letter of an available position that was approved by Dr. Stephen Bailey as within Petitioner's physical limitations. Petitioner would have earned $21,850 per year beginning June 22, 1999 and would have received reduced benefits of $278.62 per week had he accepted the position. His police pension paid $21,811.44 per year. Petitioner did not respond to the job offer.

The WCJ found that the "overall effect of [Petitioner's] accepting the job as offered by the defendant would result in an unjust burden to the claimant, and an unjust benefit to the defendant." WCJ Decision, at p. 6. Based on the parties' stipulations and other evidence the WCJ credited, he found among other things that the clerk II position is covered by the AFSCME collective bargaining agreement with Employer, that if Petitioner were employed by the City he would no longer receive his pension, which would be frozen, and that during any additional time Petitioner worked for the City he would not accrue pension benefits through either pension plan. Citing *Camp v. Workers' Compensation Appeal Board (City of Philadelphia)*, 746 A.2d 1219 (Pa.Cmwlth. 2000), the WCJ concluded that Employer had not met its burden of proving that the job was actually available to Petitioner based on the significant sacrifices that he would have to make.

■ Relying on *O'Brien*, the Board reversed the WCJ. It cited the proposition from *O'Brien* that when a claimant sufficiently recovers from a work injury to be able to perform offered light-duty work, the claimant is no longer totally disabled and may not continue to receive pension benefits and total disability benefits. The Court's review of the Board's order is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence in the record. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

Petitioner argues that the Board erroneously applied *O'Brien* inasmuch as the facts there are easily distinguishable. The claimant in *O'Brien* would have increased his overall pension benefits by accepting the offered position as he would earn additional pension benefits during his reemployment. Petitioner, on the other hand,

would not only forfeit his current pension benefits, but he also would lose any future accrual of pension benefits if he accepted the position. Moreover, unlike the claimant in *Milici v. Workers' Compensation Appeal Board*, 778 A.2d 1282 (Pa.Cmwlth. 2001), *appeal granted*, 568 Pa. 639, 793 A.2d 912 (2002), Petitioner cannot roll over his service from one pension plan to another. Petitioner agrees with the WCJ that the reasoning in *Camp* accurately applies here.

In *Camp* an injured and thereafter retired battalion fire chief for the City of Philadelphia was offered a light-duty job as a fire communications dispatcher. He argued that the position was offered in bad faith under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). The Court remanded the case for further findings and conclusions of law on whether the position offered to the retired battalion chief was actually available to him. In *Kachinski* and in *St. Joe Container Co. v. Workmen's Compensation Appeal Board (Staroschuck)*, 534 Pa. 347, 633 A.2d 128 (1993), the Supreme Court held that a proffered position is not actually available to an employee when acceptance would result in the loss of a qualitative benefit. Petitioner contends that if he accepted the clerk II position he would lose his current pension income, and the parties stipulated that he would be ineligible to accumulate additional pension benefits from the new job. In addition, if Petitioner were employed by anyone else, his pension payments would continue undisturbed.

Employer argues that the Board did not err when it relied on *O'Brien* and that the facts here are not distinguishable. Employer asserts that *St. Joe Container* does not apply because as in *O'Brien*, Petitioner voluntarily retired from his light-duty job, accepting his pension in lieu of continuing to earn wages. Although Petitioner would not accrue additional pension benefits upon his reemployment in the clerk II position, Employer claims that he nonetheless would receive generous benefits including sick leave, life insurance and health care. Furthermore, Petitioner's pension benefits would simply be suspended until he retired, and although the claimants in *City of Philadelphia v. Workers' Compensation Appeal Board (Szparagowski)*, 771 A.2d 75 (Pa.Cmwlth.), *appeal granted*, 567 Pa. 766, 790 A.2d 1019 (2001), and in *City of Philadelphia v. Workers' Compensation Appeal Board (Kos)*, 788 A.2d 1046 (Pa.Cmwlth. 2001), suffered qualitative detriment that rendered the offered positions unavailable to them, Petitioner has not suffered a similar detriment. Employer contends that Petitioner would not have to sacrifice his vested pension as in *Szparagowski* nor would he have to accept an inferior pension plan with a higher retirement age as in *Kos*.[1]

■ The Court finds that *O'Brien* is clearly distinguishable from the facts in this case. In fact, the claimant in *O'Brien* would receive an overall increase in his pension benefits by virtue of the additional accrual of benefits upon his reemployment as compared to Petitioner, who not only would forfeit his current pension benefits but also would be denied any future accrual of benefits in the clerk II or any other pension plan. Consequently, the Court

1. Petitioner argues that the Court's determination in *Kos* also applies. The Court held there that a job was not actually available to a retired firefighter because the job proffered would have changed his pension rights. In *Szparagowski* the Court held that a loss of current pension payments in addition to the receipt of a less appealing pension plan constituted a loss of qualitative benefits, thus making the job unavailable to the claimant.

disagrees that the clerk II position was actually available to Petitioner. The Supreme Court in *Kachinski* set forth the necessary criteria for an employer to succeed in a modification petition, and the WCJ correctly determined that Employer did not satisfy the necessary criteria.[2] The Supreme Court's application of *Kachinski* in *St. Joe Container* revealed that in some instances the court "must determine whether the job is, in essence, unacceptable for some reason unrelated to the employee's physical abilities or his conduct in connection with a valid job referral, thus rendering it unavailable to the Claimant." *Id.*, 534 Pa. at 352, 633 A.2d at 130.

Even though the WCJ found that the clerk II position was within Petitioner's physical limitations, he also found based on substantial evidence of record that the position was nevertheless unavailable to Petitioner because of the significant sacrifices or qualitative loss that Petitioner would suffer if he were required to return to work in the offered position. If Petitioner worked for anyone other than Employer, he would be permitted to accrue additional pension benefits while maintaining his existing pension. Because the WCJ's findings of significant detriment to Petitioner were based on substantial evidence and those findings support the conclusions of law that the WCJ reached, the Board erred in reversing the WCJ's decision. The Court in turn must reverse the order of the Board.

2. The Supreme Court in *Kachinski* set forth the following standard:
   1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.
   2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.
   3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).
   4. If the referral fails to result in a job then claimant's benefits should continue. *Id.* at 252, 532 A.2d at 380.

## ORDER

AND NOW, this 2nd day of August, the order of the Workers' Compensation Appeal Board is reversed.